

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MAY 1 2 2008**

**F I L E D**

MAY 1 2 2008 *MB*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TOMAS ORTIZ,
    MOVANT

VS.

    CASE NO: 08-CV-880, 04-CR-714
        Honorable Elaine Bucklo

UNITED STATES OF AMERICA,
        RESPONDENT

---

MOVANT'S RESPONSE TO RESPONDENT'S RESPONSE TO MOVANT'S
MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE IN
PURSUANT 28 U.S.C. § 2255

** ** ** ** ** ** ** ** **

COMES NOW THE MOVANT TOMAS ORTIZ, APPEARING IN A PRO SE MANNER, AND HEREBY MOVES THIS HONORABLE COURT IN PURSUANT TO THE ABOVE STYLED MOTION.

AS GROUNDS FOR THIS MOTION, THE MOVANT HEREBY ASSERTS A TIMELY RESPONSE TO THE GOVERNMENT'S RESPONSE IN PURSUANT TO HIS MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE IN PURSUANT TO 28 U.S.C. § 2255.

IN RESPONSE TO THE INITIAL ARGUMENT [1]. THAT THE MOVANT HAS ASSERTED, HE STANDS BY HIS ASSERTION THAT THE COURT ABUSED IT'S DISCRETION IN SENTENCING HIM BY ENHANCING HIS SENTENCE FOUR LEVELS PURSUANT TO 2K2.1(b)(5), FOR TRANSFERRING THE FIREARM WITH THE KNOWLEDGE, INTENT OR REASON TO BELIEVE THE FIREARM WAS TO BE USED

TO COMMIT ANOTHER FELONY OFFENSE. IT WAS NEVER PROVEN OR DETERMINED
THAT THE MOVANT POSSESSED THE FIREARM OR TRANSFERRED THE FIREARM TO
ANOTHER WITH THE UNDERSTANDING THAT A FELONY OFFENSE WOULD BE COMMITTED.
FURTHER, NO FELONY OFFENSE TOOK PLACE. TO ENHANCE THE MOVANT FOR
CONDUCT THAT NEVER TOOK PLACE, IS CLEARLY UNCONSTITUTIONAL AND
PREJUDICE TO THE MOVANT. AS ASSERTED, THE MOVANR STANDS BY THIS ISSUE
AS ASSERTED.

IN REFERENCE TO ARGUMENT [2]., THE MOVANT INITIALLY ASSERTED
THAT THE COURT ERRED IN ALLOWING THE INTRODUCTION AT TRIAL OF 404(b)
EVIDENCE OF HIS PRIOR BAD ACTS. AS ASSERTED AND OUTLINED IN RULE
404(b), OF THE FRE, PROVIDES THAT UNLESS THE DEFENDANT PUTS HIS
CHARACTER IN ISSUE, THE GOVERNMENT MAY NOT INTRODUCE EVIDENCE OF
"OTHER CRIMES, WRONGS, OR ACTS" TO PROVE HIS CHARACTER IN ORDER TO
SHOW THAT HE ACTED IN CONFORMITY THEREWITH. CLEARLY, THE MOVANT'S
COUNSEL DID NOT PUT HIS CHARACTER AT ISSUE. FOR THE COURT TO ALLOW
THE ADMISSION OF THE FRE 404(b) EVIDENCE WAS CLEARLY ERROR AND THUS
SUBJECTED THE MOVANT TO GRAVE PREJUDICE. CLEARLY A REVERSAL IS RE-
QUIRED IN THIS CASE AS TO THIS ISSUE.

IN REFERENCE TO ARGUMENT [3]., THE MOVANT INITIALLY ASSERTED
THAT COUNSEL WAS INEFFECTIVE FOR RECOMMENDING THAT HE SIGN A STI-
PULATION TO THE ISSUE OF HIM BEING A FELON. THE MOVANT STAND BY THIS
ASSERTION AS MADE. THERE WAS NO LEGAL STRATEGIC REASONING BEHIND
COUNSEL HAVING THE MOVANT TO ADMIT THAT HE WAS A FELON OTHER THAN
VIOLATING THE FIFTH AMENDMENT OF THE CONSTITUTION, TO THE RIGHT
AGAINST SELF-INCRIMINATION. IT WAS THE PROSECUTIONS JOB TO MAKE
THIS ASSERTION AS TO WHETHER OR NOT THE MOVANT WAS A FELON OR NOT.
FOR COUNSEL TO HAVE THE MOVANT TO INCRIMINATE HIMSELF IS CLEARLY
NOT IN ACCORDANCE WITH THE PROFESSIONAL CODES OF CONDUCT PRESCRIBED

BY THE A.B.A. AS ASSERTED, THE MOVANT STANDS BY HIS INITIAL ASSERTION
AND REQUESTS THAT A REVERSAL BE GRANTED AS TO THIS ISSUE.

AS TO ARGUMENT [4]., THE MOVANT STANDS BY HIS INITIAL ASSERTION
AS OUTLINED UNDER THE COMMERCE CLAUSE.

AS TO ARGUMENT [5]., THE MOVANT STAND BY HIS INITIAL ASSERTION
THAT 18 U.S.C. § 3231 IS UNCONSTITUTIONAL AND REQUESTS THAT AN
EVIDENTIARY HEARING BE GRANTED TO FULLY DEVELOPE THIS ISSUE. THE
MOVANT STANDS BY HIS INITIAL ASSERTION.

AS TO ARGUMENT [6]., THE MOVANT STANDS BY HIS INITIAL ASSERTION
THAT THE COURT ERRED IN EXERCISING DISCRETION OVER THE SUBJECT MATTER
IN REFERENCE TO JURISDICTIONAL ISSUES. CLEARLY THE U.S. ATTORNEY HAS
MISPLACED THE TRUE MEANING BEHIND THE ISSUE OF JURISDICTION, AS IN
AND OR ITSELF, JURISDICTION IS AN ISSUE THAT CAN **NEVER** BE WAIVED.
THE ISSUE OF THIS COURT HAVING JURISDICTION OF THE SUBJECT MATTER
IS ONE IN WHICH THE MOVANT STANDS BY. FOR THE U.S. ATTORNEY TO FLAT
OUT MAKE THE ASSERTION THAT THIS ISSUE IS INCOMPREHENSIBLE, IS
CLEARLY MISPLACING THE TRUE FACTS AS THEY STAND. AS TO THIS ISSUE,
THE MOVANT STANDS BY THE ASSERTION AS MADE AND REQUESTS THAT THIS
CASE BE REVERSED AND THAT AN EVIDENTIARY HEARING BE GRANTED AS TO
THIS ISSUE.

AS TO ARGUMENT [7]., THE MOVANT ASSERTS THAT COUNSEL WAS THUS
INEFFECTIVE FOR FAILING TO SEEK SUPPRESSION OF RECORDER CONVERSATIONS
IS BE AGAIN ASSERTED AND STOOD BY. TITLE III MANDATES THAT CERTAIN
PROCEDURES BE FOLLOWED WHEN LAW ENFORCEMENT OFFICIAL CONDUCT ELEC-
TRONIC SURVEILLANCE. LAW ENFORCEMENT OFFICIALS **MUST** FIRST RECEIVE
AUTHORIZATION TO APPLY FOR A COURT ORDER AUTHORIZING THE INTERCEPTION
OF WIRE, ORAL, OR ELECTRONIC COMMUNICATIONS IN CONNECTION WITH THE
INVESTIGATION OF CERTAIN ENUMERATED CRIMES. TITLE III ALLOWS ANY

AGGREIVED PERSON TO MOVE TO SUPPRESS THE CONTENTS OF INTERCEPTED ORAL
AND WIRE COMMUNICATIONS, OR EVIDENCE DERIVED THEREFROM, OBTAINED IN
VIOLATION OF THE STATUE. FOR COUNSEL NOT TO SEEK THE SUPPRESSION OF
THE ORAL COMMUNICATIONS, THAT WERE CLEARLY THE SUBJECT OF A VIOLATION
OF TH MOVANT'S FOURTH AMENDMENT, IS CLEARLY INEFFECTIVE ASSISTANCE
OF COUNSEL. CLEARLY, AS TO LOPEZ V. U.S., 373 U.S. 427 (1963), THE
U.S. ATTORNEY HAS MISPLACED THE FACTORS AS TO THIS CASE.  WHEREAS,
THE MOVANT STANDS BY HIS INITIAL ASSERTION AS STANDS AND REQUESTS
THAT AN EVIDENTIARY HEARING BE GRANTED AS TO THIS ISSUE.

   **WHEREFORE,** THE MOVANT RESPECTFULLY REQUESTS THAT THIS HONORABLE
COURT ENTER AN ORDER GRANTING THIS MOTION TO VACATE, CORRECT OR
SET ASIDE SENTENCE IN PURSUANT TO 28 U.S.C. § 2255, THAT AN EVIDENTIARY
HEARING BE ORDERED TO FULLY DEVELOPE THE ISSUES AS ASSERTED AS WELL
AS ANY AND ALL OTHER RELIEF THAT THE MOVANT MAY BE ENTITLED TO AS A
MATTER OF LAW.

                         RESPECTFULLY SUBMITTED,


                         _Tomas Ortiz_
                         MR. TOMAS ORTIZ, PRO SE,
                         #17223-424
                         F.C.I. MANCHESTER, P.O. BOX 4000
                         MANCHESTER, KY. 40962-4000

## CERTIFICATE OF SERVICE

** ** ** ** **

I _Tomas Ortiz_, DO HEREBY CERTIFY THAT TRUE, ACCURATE AND CORRECT COPIES OF THE FOREGOING RESPONSE HAS BEEN MAILED FIRST CLASS, POSTAGE PREPAID TO THE CLERK OF THE U.S. DISTRICT COURT AT: _219 SOUTH DEARBORN ST., CHICAGO, ILL. 60604_, AND TO THE U.S. ATTORNEY'S OFFICE AT 219 SOUTH DEARBORN ST., 5TH. FLOOR, CHICAGO, ILLINOIS 60604, BY PLACING THEM IN THE U.S. POSTAL MAIL HERE AT F.C.I. MANCHESTER ON THIS _5th_ DAY OF _May_, 2008.

RESPECTFULLY SUBMITTED,

_Tomas Ortiz_
MR. TOMAS ORTIZ / PRO SE,
# 17223-424
F.C.I. MANCHESTER, P.O. BOX 4000
MANCHESTER, KY. 40962-4000

12

### 1. THE CONSTITUTIONALITY OF *PUBLIC LAW 80-772* AFFECTS ALL FEDERAL CRIMINAL CASES SINCE 1948

Petitioners are challenging *Public Law 80-772,* Act of June 25, 1948, Ch. 645, Section 1, 62 Stat. 683 *et seq.* on numerous constitutional grounds. Potentially *at least* tens of thousands of current federal prisoners will be affected – a number exponentially enlarged respecting such prosecutions since 1948. This matter directly affects their family members, business endeavors, fines and forfeitures realistically involving millions of people and billions of dollars. Collateral effects, *e.g.*, loss of rights to vote, to sit on juries, consortium, to raise families, to travel, to reputation – and for those prisoners executed, pending execution or subject to executable offenses – the right to life, are also involved. This alone *by far* exceeds the "exceptional circumstances" of *any* habeas petition originally heard by this Court. However, additional exceptional circumstances exist.

### 2. CITIZENS OR SUBJECTS OF FOREIGN NATIONS AND INTERNATIONAL AFFAIRS WILL BE AFFECTED BY THE OUTCOME OF THIS CASE

Foreign nations have turned their citizens, subjects, or denizens over to the United States *via* extradition treaties for trial in United States district courts pursuant to 18 U.S.C. § 3231. Thus, the rights of those prisoners and collateral effects must be presumed. Finally, the dignity of the United States, foreign nations, and international relations will potentially be affected by the outcome of this case. *Only this Court* can provide the assurance necessary to the awesome interests involved in these circumstances.

13

### 3. POTENTIAL INTERESTS OF DISTRICT JUDGES IN THE OUTCOME OF THE INSTANT CLAIMS PROHIBITING THEIR HEARING THESE PETITIONS PURSUANT TO 28 U.S.C. § 455 AND DUE PROCESS OF LAW AND REQUIRING UNDER THE RULE OF NECESSITY THAT THIS COURT PROCEED TO DO SO

Federal Courts are courts of limited jurisdiction, *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and a ruling that *Public Law 80-772* is unconstitutional will arguably render every federal district court judge civilly liable for every exercise of jurisdiction pursuant to 18 U.S.C. § 3231. *See Stump v. Sparkman*, 435 U.S. 349, 358-359 (1978). Judges of courts of limited jurisdiction have been held civilly liable upon void jurisdiction. Even Supreme Court Justices arguably have the same potential conflict, but for the reasons stated below must be excepted from the prohibitions of 28 U.S.C. § 455 and Due Process of Law.

"[T]he sensitivity of the issues" requires "address[ing] the applicability of [28 U.S.C.] § 455 with the same degree of care and attention ... employ[ed] [upon an] assert[ion] that the District Court[s] lacked jurisdiction or that § 455 mandates disqualification of all [district] judges ... without exception." *United States v. Will*, 449 U.S. 200, 217 (1980) (brackets supplying immediate circumstances). The purpose "of § 455 is to guarantee litigants a fair forum," *Id.*, "to promote public confidence in the integrity of the judicial process," *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988) (citing S. Rep. No. 93-417, p. 5 (1973); H.R. Rep. No. 93-1453, p. 5 (1973)), and to provide "positive disqualification by reason of ... the appearance of possible bias." *Will*, 449 U.S. at 216; *Liteky v. United States*, 510 U.S. 540, 553 n. 2 (1994) (same); *Liljeberg*, 486 U.S. at 859-860 & n. 8 (same).

"[A]rgu[ably] ... a [district] judge will feel the motivation to vindicate a prior conclusion," *Liteky*, 510 U.S. at

of Necessity" required the District Judge and the Justices to hear the case regardless of interests as no substitute district judge was available. 449 U.S. at 212.

The Justices of the Supreme Court are furthest from the operation of Section 3231 and have no peer pressures. Thus, "[t]he biasing influence . . . [is] too remote and insubstantial to violate constitutional constraints.'" *Aetna*, 475 U.S. at 826 (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980)). *Cf. Tumey v. Ohio*, 273 U.S. 510, 531 (1927) (citing Cooley, Const. Limitations 594 (7th ed. 1903)) (qualifying remoteness of interest). The Supreme Court Justices can not realistically be held liable by private parties, if, for no other reason, because this Court is essential to the tripartite Government established by Article III of the Constitution, whereas, district courts are created at Congress' discretion. Whether district judges will ultimately be held liable must await its own day in court. It suffices that they could be. *See, e.g., Bradley v. Fisher*, 80 U.S. 335 (1872).

The "Rule of Necessity" requires some court hear these constitutional challenges. *Will, supra.* Another aspect of that Rule requires in a case of choice selection of the "lesser of two evils." *United States v. Bailey*, 444 U.S. 394, 410 (1980) (construing Rule "in the context of a prison escape"). Under these exceptional circumstances, this Court should proceed promptly to hear these petitions and to resolve with speed and finality the significant questions herein.

**B.** *Public Law 80-772* **Is Unconstitutional And** *Void* **Because** *H.R. 3190* **Never Passed Both Houses As Required By Article I, Section 7, Clause 2**

**1. THE LEGAL PRINCIPLES**

This case presents the "profoundly important issue,"[10] of the constitutionality of an act of Congress[11] — matters

---

[10] *Clinton v. City of New York*, 524 U.S. 417, 439 (1998).

" 'of such public importance as to justify deviation from normal appellate practice and to require immediate determination by this Court.'" *Clinton*, 524 U.S. at 455 (Scalia, J., and O'Conner, J., joining in part and dissenting in part) (adopting language directly from Sup. Ct. R. 11).[12]

Although "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives," (Art. I, § 1, U.S. Constitution), "when [Congress] exercises its legislative power, it must follow the 'single, finely wrought and exhaustively considered procedures' specified in Article I." *Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 274 (1991) (quoting *INS v. Chadha*, 462 U.S. at 951). Article I establishes "just how those powers are to be exercised." *INS v. Chadha*, 462 U.S. at 945.

An act of Congress "does *not* become a law unless it follows each and every procedural step chartered in Article I, § 7, cl. 2, of the Constitution." *Landgraf v. USI Film Products*, 511 U.S. 244, 263 (1994) (citing *INS v. Chadha*, 462 U.S. at 946-951 (emphasis added)); *Clinton*, 524 U.S. at 448 (noting requisite "steps" taken before bill may " 'become a law' " and holding that a procedurally defective enactment cannot " 'become a law' pursuant to the procedures designed by the Framers of Article I, § 7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its *exact text* was approved by a majority

---

[11] *INS v. Chadha*, 462 U.S. 919, 929 (1983).

[12] *Clinton*, 524 U.S. at 447, "twice had full argument and briefing," as did *INS v. Chadha*, 462 U.S. at 943-944 ("The important issues have been fully briefed and twice argued.") "[T]he importance of the question," *Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 263 (1991), has always been noted. *Wright v. United States*, 302 U.S. 583, 586 (1938) ("the importance of the question"); *Pocket Veto Case*, 279 U.S. 655, 673 (1929) ("the public importance of the question presented"); *Missouri Pacific Railway Co. v. Kansas*, 248 U.S. 276, 279 (1919) ("the importance of the subject").

of the Members of the House of Representatives; (2) the Senate approved *precisely the same text*; and (3) *that text* was signed into law by the President. "If one paragraph of *that text* had been omitted at *any one of those three stages*, [the] law [in question] would *not* have been validly enacted."[13] *Clinton*, 524 U.S. at 448 (emphasis added). Between the second and third "procedural steps," the bill " . . . shall . . . be presented to the President . . . " Article I, § 7, Cl. 2.

The text of *H.R. 3190* passed by the House of Representatives was the text as it existed on the date of passage – *i.e.*, May 12, 1947. Whereas, the text of the bill passed by the Senate on June 18, 1948, was *H.R. 3190* "as amended." *Senate Journal*, June 18, 1948, p. 506. Thus, the text of the bills passed by the respective Houses was grossly different and neither bill ever "became a law." *Clinton*, 524 U.S. at 448.

## C. Permitting Post-Adjournment Legislative Business Pursuant To *H.Con.Res. 219* Violated The Quorum, Bicameral And Presentment Requirements Of Article I Of The Constitution

After Congress adjourned on June 20, 1948, pursuant to *H.Con.Res. 219*, a single officer of each House of Congress signed *a bill* purporting to be *H.R. 3190* on June 22-23, 1948,

---

[13] "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1 of the Constitution.

" . . . [A] Majority of each [House] shall constitute a Quorum to do Business . . . " Art. I, § 5, Cl. 1.

"Every Bill which shall have passed [both Houses], shall, before it becomes a Law, be presented to the President of the United States; If he approves he shall sign it . . . " Art. I, § 7, Cl. 2.

"Every . . . Resolution . . . to which the Concurrence of [both Houses] may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him . . . " Art. I, § 7, Cl. 3.

94 *Cong. Rec.* 9354; *House Journal*, legislative day of June 19, 1948, p. 777; *Senate Journal*, legislative day of June 18, 1948, pp. 578-579, and presented *that bill* to the President, who signed it on June 25, 1948. 94 *Cong. Rec.* 9365-9367. Thus, the post-adjournment signature "provision [of *H.Con.Res. 219*] was an important part of the legislative scheme," leading to the enactment of *Public Law 80-772*, without which it would never have "become a Law." *Bowsher v. Synar*, 478 U.S. 714, 728 (1986). *Public Law 80-772 falsely* stated it was "enacted" when both Houses were "in Congress assembled," when in fact Congress was not in session. *See* National Archives & Records Adm. Cert., *H.R. 3190* as signed into *P.L. 80-772*.

The bill signed was the Senate's amended *H.R. 3190* – a bill never certified as "truly enrolled," *compare Pub.L. 80-772*, Enactment Clause & signature pages *with H.R. 3190*, certified as "truly enrolled," *supra*, and *H.Con.Res. 219* never authorized the signing of *unenrolled* bills after adjournment. *See H.Con.Res. 219, supra*, 62 Stat. 1436.

Article I, § 5, Clause 1 mandates a quorum of both Houses of Congress "to do Business." This constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme Court holdings and duly enacted statutes.

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.'" Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses and sent to the President of the United States,"[14] 1 U.S.C. § 106, the actual procedure is regulated by House rules and established practice. Following passage the "chairman of the Committee on House Administration . . .

---

[14] 1 U.S.C. § 106 contains an exception for enrollment "[d]uring the last six days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.

affixes to the bills examined a certificate that the bill has been found truly enrolled,"[15] *House Doc. No. 769, supra,* Stages of a Bill, § 983, No. 16, p. [483] (App. 79), after which the "enrolled bill is first laid before the House of Representatives and signed by the Speaker . . . after which it is transmitted to the Senate and signed by the President of that body." *Id.*, No. 17, p. [484][16] (App. 80).

The Supreme Court in *Marshall Field & Co. v. Clark,* 143 U.S. 649 (1892), defined the essence of this procedure:

> *The signing* by the Speaker of the House of Representatives, and, by the President of the Senate, *in open session, of an enrolled bill is an official attestation by the two houses* of such bill as one that has passed Congress. It is *a declaration by the two houses,* through their presiding officers, *to the President,* that a bill, thus attested, has received, in due form, *the sanction of the legislative branch* of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added). 1 U.S.C. § 106 codified this implicit constitutional requirement. Reading 1 U.S.C. §§ 101 and 106 together requires that all acts must occur

---

[15] Formerly, the "chairman of the Committee on Enrolled Bills" performed this critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker." *See House Doc. No. 355*, 59th Cong., 2nd Sess., *Hinds' Precedents of the House of Representatives,* Ch. XCI, § 3429, notes 3 & 5, p. 311 (G.P.O. 1907) (App. 92). *See House Doc. No. 769, supra,* Preface, p. [VI] ("The rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes . . . [which are] embodied in the monumental work[s] of *Hinds* and *Canon*.") (App. 71).

[16] The Supreme Court not only takes judicial notice of the legislative history of a bill, *Alaska v. American Can Co.*, 358 U.S. 224, 226-227 (1959), but will both judicially notice and "h[o]ld" Congress and its legislative committees "to observance of its rules." *Yellin v. United States,* 374 U.S. 109, 114 (1963).

at least through presentment to the President while Congress is in session. That the enrolled bill must be "layed before the House" prior to signing by the Speaker and *then* "transmitted to the Senate" before the signing by the President of that body concludes that the respective Houses *must be in session during this transaction.*[17]

An "adjournment terminates the legislative existence of Congress." *Pocket Veto Case,* 279 U.S. at 681. "Th[e] expression, a "house," or "each house," [when] employed . . . with reference to the faculties and powers of the two chambers . . . always means . . . the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'" 279 U.S. at 683, quoting I *Curtis' Constitutional History of the United States,* 486 n. 1. Moreover, the term "'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'" *Id.* (quoting *Missouri Pacific Railway Co. v. Kansas,* 248 U.S. 276, 281 (1919)). *See also House Doc. No. 355, supra, Hinds' Precedents,* § 2939, p. 87 ("'The House is not a House without a quorum'") (App. 87).

No "attestation" or "declaration **by the two houses** . . . to the President," *Field & Co.,* 143 U.S. at 672, that *H.R. 3190* had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed. *See also United States National Bank of Oregon v. Independent Insurance Agents of America,* 508 U.S. 439, 455 n. 7 (1993) (noting that the rule established in *Field & Co.,* 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by

---

[17] "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." *United States v. Munoz-Flores,* 495 U.S. 385, 391 n. 4 (1990) (citing *Field & Co. v. Clark,* 143 U.S. 649 (1892), in which case the Court established the so-called "enrolled bill rule" – a rule *not* applicable in this case, but a *ruling* that supports Petitioners' claims.)

the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. *House Doc. No. 355, supra, Hinds' Precedents, Vol. IV,* § 2951, pp. 90-91 (upon "disclos[ure] ... that there is not a quorum ... , [t]he House thereby becomes **constitutionally disqualified** to do further business") (excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1) (emphasis added) (App. 88-89); *id.,* § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.") (App. 93); *id.* at § 3486, pp. 332-333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment) (App. 95-96); *id.* at § 3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment) (App. 96); *id.* at § 4788, p. 1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House.") (App. 100).

Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House ... sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. § 106. In the immediate case *H.R. 3190* was passed by the House of Representatives on May 12, 1947, engrossed and sent to the Senate and there referred to the Senate's Committee on the Judiciary. *See* 93 *Cong. Rec.* 5048-5049, 5121; *Senate Journal,* May 13, 1947, p. 252. However, it was not dealt with nor passed "in that form."

Instead, amendments were proposed which were "agreed to en bloc," read into the record and "ordered to be engrossed," 94 *Cong. Rec.* 8721-8722. Then, "the [amended] bill was read the third time and passed." 94 *Cong. Rec.* 8722; *Senate Journal,* June 18, 1948, p. 506. The House then concurred in the amendments en bloc. 94 *Cong. Rec.* 8864-8865; *House Journal,* June 18, 1948, p. 704.[18]

---

[18] This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes

(Continued on following page)

"The House in which a bill originates enrolls it," *House Doc. No. 769, supra,* Stages of a Bill, No. 15, p. [483] (App. 79), and, in the case of House bills, the "chairman of the Committee on House Administration . . . affixes to the bills examined a certificate that the bill has been found truly enrolled," *id.*, No. 16, p. [483], after which it is "laid before the House . . . signed by the Speaker [then] transmitted to the Senate and signed by the President of that body." *Id.*, No. 17, p. [484]. Unequivocally, "[t]he Speaker may not sign an enrolled bill in the absence of a quorum." *House Doc. No. 355, supra, Hinds' Precedents,* § 3458, p. 322. *Cf., id.*, § 2939, p. 87 ("The House is not a House without a quorum.").

The constitutional "quorum" issue is precluded from the *Field & Co.'s* "enrolled bill rule" by its terms – *i.e.*, "[t]he signing . . . **in open session**, of an enrolled bill," 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of [a] constitutional requirement binding Congress." *United States v. Munoz-Flores, supra,* 495 U.S. at 391 n. 4. Moreover, just as "§ 7 gives effect to **all** of its Clauses in determining what procedures the Legislative and Executive branches must follow to enact a law," *id.*, 495 U.S. 386 (emphasis by Court), so too does Article I, § 5, Cl. 1 "provid[e] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses," *INS v. Chadha,* 462 U.S. at 949-950, as to all legislative "Business." *Cf. United States v. Ballin,* 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses are to be considered to decide the issue).

The bill signed by the Officers of the Houses presented to and signed by the President of the United States was the Senate's amended bill, which never passed the House. *H.Con.Res. 219* only "authorized [the] sign[ing] [of] enrolled bills . . . duly passed by the two Houses and found

---

before the House, the House takes up each amendment by itself. . . . " *House Doc. No. 769,* Stages of a Bill in the House, § 983, No. 13, p. [483].

truly enrolled," *H.Con.Res. 219, supra*, 62 Stat. 1436, voiding the signatures on the amended bill.[19]

Having not been enrolled, certified as truly enrolled, or signed by the Speaker of the House with a quorum present, the bill was rendered constitutionally void. *House Doc. No. 769, supra*, Constitution of the United States, § 55, p. [19] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum . . . the action was null and void") (App. 74); *House Doc. No. 355, supra, Hinds' Precedents*, §§ 3497 & 3498, pp. 344-345 (such a bill is "not in force" and is "not a valid statute") (App. 97-98). *Cf., id., Hinds' Precedents*, § 2962, p. 94 (to vacate legislative act "the absence of a quorum should appear from the Journal") (App. 90).

Art. I, § 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States . . . ,'" Art. I, § 7, Cl. 2; *INS v. Chadha*, 462 U.S. at 945, which "can only contemplate a presentment by the Congress in some manner, [because] . . . [a]t that point the bill is necessarily in the hands of the Congress." *United States v. Kapsalis*, 214 F.2d 677, 680 (7th Cir. 1954), *cert. denied*, 349 U.S. 906 (1955) (emphasis added). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. *INS v. Chadha*, 462 U.S. at 945, 947, 951; *La Abra Silver Mining Co. v. United States*, 175 U.S. 423, 454

---

[19] On July 26, 1948, "Mr. LeCompte, from the Committee on House Administration, reported that that committee had examined and found" that *H.R. 3190* had been "truly enrolled." 94 *Cong. Rec.* 9363. The version of *H.R. 3190* certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original § 3231 — the text of which was never passed by the Senate — to which his certificate of enrollment is attached. (App. 107-113). The statutory mandate after final passage and printing to "call[ ]" the bill in such final form "the enrolled bill," 1 U.S.C. § 106, Act of July 30, 1947, Ch. 388, Ch. 2, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill," *House Doc. No. 769*, Stages of a Bill, *supra*, No. 16, all of which is required *before* the "sign[ing] by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 U.S.C. § 106.

(1899) ("*After a bill has been presented* to the President, *no further action is required by Congress* in respect of that bill, unless it be disapproved by him. . . .") (emphasis added). *See House Doc. No. 355, supra, Hinds' Precedents*, Vol. IV, § 4788, p. 1026 (recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]" of "business" of "the House"); *id.*, § 3486, p. 332 (recognizing presentment required prior to adjournment); *id.*, § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business"). Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] . . . in Art. I, §§ 1, 7." *INS v. Chadha*, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.' As a consequence, Art. I, § 7, Cl. 3, . . . was added." *INS v. Chadha*, 462 U.S. at 947 (citing 2 Farrand, *supra*, 301-302, 304-305).

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" *INS v. Chadha*, 462 U.S. at 952 (quoting S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897)). "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7." *Metropolitan*, 501 U.S. at 276. *See also Bowsher v. Synar*, 478 U.S. at 756 (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the full Article I requirements must

be observed. For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.' Ibid.").

"'Congress,'" of course, "'cannot grant to an officer under its control what it does not possess.'" *Metropolitan*, 501 U.S. at 275 (quoting *Bowsher v. Synar*, 478 U.S. at 726). Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power,'" when its "legislative existence" has been "terminate[d]" by an "adjournment." *Pocket Veto Case*, 279 U.S. at 681-683 (citations omitted). "The limitation of the power of less than a quorum is absolute," *House Doc. No. 355, supra, Hinds' Precedents*, Vol. V, Ch. CXL, § 6686, p. 851 (App. 102), and includes the signing of an enrolled bill by the Speaker of the House, *id.*, Vol. IV, Ch. XCI, § 3458, p. 322, and presentment to the President of the United States. *id.*, Ch. XCII, §§ 3486, 3487 & 3497, pp. 332, 333 note 3, 344 & 345 (App. 95-98). *Wright v. United States*, 302 U.S. 583, 600 (1938) (Stone, J., concurring) ("The houses of Congress, being collective bodies, transacting their routine business by majority action are capable of acting only when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.") Thus, "Congress," as defined by the Constitution and Supreme Court, never "presented" *any* version of *H.R. 3190* to the President of the United States.

Whether the action taken under *H.Con.Res. 219* was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." *INS v. Chadha*, 462 U.S. at 952. "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." *Metropolitan*, 501 U.S. at 276, quoting *INS v. Chadha*, 462 U.S. at 952-955. "If Congress chooses to use a [] resolution ... as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," *Consumer Energy Council of America v. F.E.R.C.*, 673 F.2d

425, 476 (D.C. Cir. 1982), *aff'd mem. sub nom.*, *Process Gas Consumers Group v. Consumer Energy Council of America*, 463 U.S. 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of *H.Con.Res. 219* was to enact *a bill* the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States *with quorums sitting*. In other words, *H.Con.Res. 219* unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I, § 7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, § 5, Cl. 1 *via* a concurrent resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously provided a bill, the text of which had never passed either House " 'mask[ed] under . . . [the] indirect measure,' " *Metropolitan, supra*, 501 U.S. at 277 (quoting Madison, *The Federalist No. 48*, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill. *Public Law 80-772* did not "become a Law" as required by the constitutional procedures mandated under Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and is unconstitutional and *void ab initio*.

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum . . . the action [is] null and void," *House Doc. No. 769, supra*, Constitution of the United States, § 55, p. [19] (citing *Hinds' Precedents*, Vol. IV, § 2964), and "a bill . . . not actually passed [although] signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." *House Doc. No. 769*, § 103, p. [34] (citing *Hinds' Precedents*, Vol. IV, § 3498) (App. 75).

**D.  The District Court Orders Committing Pe-
titioners To Executive Custody Pursuant
To § 3231 (Of The Unconstitutional *Public
Law 80-772*) Were Issued *Ultra Vires*, Are
Unconstitutional And *Coram Non Judice*,
And their Imprisonments Are Unlawful**

"The challenge in this case goes to the subject-matter
jurisdiction of the [respective district] court[s] and hence
[their] power to issue the order[s]," *United States Catholic
Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S.
72, 77 (1988), committing Petitioners to imprisonment in
Executive custody. Thus, the "question is, whether . . . [the
district courts'] action is judicial or extra-judicial, with or
without the authority of law to render [the] judgment[s],"
*Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 718
(1838), and to issue the commitment orders.

Subject-matter jurisdiction means "'the courts' statu-
tory or constitutional *power* to adjudicate the case,'"
*United States v. Cotton*, 535 U.S. 625, 630 (2002), quoting
*Steel Co. v. Citizens For A Better Environment*, 523 U.S.
83, 89 (1998); *Rhode Island v. Massachusetts*, 37 U.S. (12
Pet.) at 718 ("Jurisdiction is the power to hear and deter-
mine the subject-matter in controversy between parties to
a suit, to adjudicate or exercise any judicial power over
them."); *Reynolds v. Stockton*, 140 U.S. 254, 268 (1891)
("Jurisdiction may be defined to be the right to adjudicate
concerning the subject matter in a given case."). "Subject-
matter limitations on federal jurisdiction serve institu-
tional interests by keeping the federal courts within the
bounds the Constitution and Congress have prescribed."
*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583
(1999).[20]

---

[20] "Federal courts are courts of limited jurisdiction . . . Jurisdiction
of the lower federal courts is further limited to those subjects encom-
passed within a statutory grant of jurisdiction." *Insurance Corp. of
Ireland Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 701
(1982); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922) (all lower
federal courts "derive[ ] [their] jurisdiction wholly from the authority of
(Continued on following page)

"'Without jurisdiction the court cannot proceed at all in any cause ... and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens*, 523 U.S. at 94, quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869); *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) ("lack of subject-matter jurisdiction ... precludes further adjudication"). This Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 94-95, quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884); *See also Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived ... correction [is mandatory] whether the error was raised in district court" or not. *United States v. Cotton*, 535 U.S. at 630 (citation omitted); *Steel Co.*, 523 U.S. at 94-95 (citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action ... [its] process[es] [are] void and an order of [punishment] based [thereupon] ... must be reversed." *United States Catholic Conf.*, 487 U.S. at 77; *Willy v. Coastal Corp.*, 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); *Ex parte Fisk*, 113 U.S. 713, 718 (1885)

---

Congress"); *United States v. Hudson & Goodwin*, 11 U.S. 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."). *United States v. Hall*, 98 U.S. 343, 345 (1879) (federal "courts possess no jurisdiction over crimes and offenses ... except what is given to them by the power that created them"); *Hudson & Goodwin*, 11 U.S. at 33-34. *See also, e.g., United States v. Wiltberger*, 18 U.S. 76, 95-105 (1820) ("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdiction).

("When ... a court of the United States undertakes, by its process ... to punish a man ... [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing ... is equally void.")

*Habeas corpus* review "is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged." *INS v. St. Cyr*, 533 U.S. 289, 311-314 (2001); *Bowen v. Johnston*, 306 U.S. 19, 23 (1939). A "court has jurisdiction to render a particular judgment *only when the offense charged is within the class of offenses placed by the law under its jurisdiction.*'" 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to try petitioner, the judgment is *void* and the prisoner must be discharged. *Ex parte Yarbrough*, 110 U.S. 651, 654 (1884).

Petitioners have established that the text of *H.R. 3190* signed by respective House officers and the President of the United States: (1) failed to pass the House of Representatives, and (2) that the legislative process continued after Congress adjourned by single officers of each House acting pursuant to *H.Con.Res. 219* without quorums in either House, all of which violated Article I, Section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 — and any of which rendered *Public Law 80-772* unconstitutional and *void ab initio*. *Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is void; and ... courts, as well as other departments, are bound by that instrument"). Therefore, because "the offense[s] charged ... [were] placed by the law under [the] jurisdiction," of the respective district courts below pursuant to 18 U.S.C. § 3231 of *Public Law 80-772*, which is unconstitutional, and "void, the court was without jurisdiction and the prisoner[s] must be discharged." *Yarbrough*, 110 U.S. at 654. Since *Public Law 80-772* has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 and 3 thereof, rendering *void ab initio* the jurisdiction by which the respective district courts acted to convict, enter judgment, and order Petitioners imprisoned in Executive

custody, the district courts' actions were "'*ultra vires*,'" *Ruhrgas AG*, 526 U.S. at 583 (quoting *Steel Co.*, 523 U.S. at 101-102), and "*coram non judice.*" *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) at 720.

The convictions and judgments thereupon "being without jurisdiction, [are] void, and the order[s] punishing ... [are] equally void." *Ex parte Fisk*, 113 U.S. at 718; *United States Cath. Conf.*, 487 U.S. at 77; *Willy v. Coastal Corp.*, 503 U.S. at 139. This is precisely the office and function of *habeas corpus* — *i.e.*, to "examin[e] ... the jurisdiction of the court whose judgment of conviction is challenged," *Bowen v. Johnston*, 306 U.S. at 23, and where, as here, those courts were clearly "without jurisdiction ... the prisoner[s] ... must be discharged." *Ex parte Yarbrough*, 110 U.S. at 654. *See also Ex parte Lange*, 85 U.S. (18 Wall.) 163, 166 (1874).